UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAYMOND JACKSON,

Petitioner,

-against-

UNITED STATES OF AMERICA,

Respondent.

16 Civ. 4792 (LAP)
96 Cr. 515 (LAP)

OPINION & ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Petitioner Raymond Jackson's
("Mr. Jackson") motion to vacate, set aside, or correct his
sentence pursuant to 28 U.S.C. § 2255.  (See Mot. to Vacate
("Mot. Vacate"), dated June 21, 2016 [dkt. no. 617 in 96-cr-
515]; dkt. no. 1 in 16-cv-4792; see also Pet'r's Mem. in Supp.
of Mot. Vacate ("Pet. Mem."), dated Oct. 13, 2020 [dkt. no. 683
in 96-cr-515].)[1]  The Government opposes the motion.  (See Mem.
in Opp. to Mot. Vacate ("Opp."), dated Nov. 13, 2020 [dkt. no.
690].)  Mr. Jackson replied to the Government's opposition.
(See Reply to Opp. ("Reply"), dated Nov. 27, 2020 [dkt. no.
691].)

---

[1] Unless otherwise specified, all citations to docket entries
herein refer to 96-cr-515.

For the reasons set forth below, Petitioner's § 2255 motion is denied.

I.   **Background**

Mr. Jackson and his co-defendants were involved in a racketeering "enterprise," as defined by 18 U.S.C. § 1961(4), known as the "Preacher Crew," which operated principally in the Bronx during the 1990s.  (See Superseding Indictment, dated Dec. 17, 1997 [dkt. no. 193], ¶¶ 1-5.)  In furtherance of the enterprise, Mr. Jackson and his co-defendants "engaged in numerous acts of racketeering, including murder, robbery, extortion and narcotics trafficking."  See Jackson v. United States, No. 01-cv-03967 (MBM), 2002 WL 1968328, at *1 (S.D.N.Y. Aug. 26, 2002).

a. The Indictment

On December 17, 1997, a grand jury charged Mr. Jackson and eleven co-defendants in an eighty-six-count Superseding Indictment (the "Indictment").  (See dkt. no. 193.)  The Indictment charged Mr. Jackson with, among other offenses, the following:

(1)   Count 1:  Racketeering in violation of 18 U.S.C. § 1962(c), (id. ¶¶ 1-44);

(2)   Count 2:  Racketeering conspiracy in violation of 18 U.S.C. § 1962(d), (id. ¶¶ 45-46);

(3)  <u>Count 26</u>:  Conspiracy to murder Greg Hawkins in violation
     of New York State Penal Law and 18 U.S.C. § 1959(a)(5),
     (<u>id.</u> ¶¶ 94-95);

(4)  <u>Count 27</u>:  "[U]nlawfully, intentionally, and knowingly"
     murdering and aiding and abetting the murder of Greg
     Hawkins in violation of New York State Penal Law and
     18 U.S.C. §§ 2, 1959(a)(1), (<u>id.</u> ¶¶ 96-97);

(5)  <u>Count 34</u>:  Conspiracy to murder Sheila Berry in violation
     of New York State Penal Law and 18 U.S.C. § 1959(a)(5),
     (<u>id.</u> ¶¶ 110-11);

(6)  <u>Count 35</u>:  "[U]nlawfully, intentionally, and knowingly"
     murdering and aiding and abetting the murder of Sheila
     Berry in violation of New York State Penal Law and
     18 U.S.C. §§ 2, 1959(a)(1), (<u>id.</u> ¶¶ 112-13);

(7)  <u>Count 77</u>:  Use and carrying of a firearm during and in
     relation to a crime of violence, namely, the murder of
     and conspiracy to murder Greg Hawkins as charged in
     Counts 1, 2, 26, and 27, in violation of 18 U.S.C.
     §§ 2, 924(c), (<u>id.</u> ¶ 144);

(8)  <u>Count 80</u>:  Use and carrying of a firearm during and in
     relation to a crime of violence, namely, the murder of
     and conspiracy to murder Sheila Berry as charged in
     Counts 1, 2, 34, and 35, in violation of 18 U.S.C.
     §§ 2, 924(c).  (<u>Id.</u> ¶ 147.)

b. The Plea Agreement & Mr. Jackson's Guilty Plea

Mr. Jackson's trial began on April 5, 1999. (See dkt. no. 459 at 1.)  Two days into trial, Mr. Jackson pled guilty pursuant to a plea agreement. (See id. at 398:3-419:15.)  The plea agreement stated that the Government accepted a guilty plea from Mr. Jackson to Count 20—the conspiracy to murder George Ford—and Counts 77 and 80 (the "§ 924(c) counts" or the "§ 924(c) convictions")—the use and carrying of a firearm in relation to a crime of violence. (See dkt. no. 683-2 at 1-2 (Ex. B).)  The plea agreement listed two predicate crimes of violence as the bases for each § 924(c) count: "(1) the conspiracy to murder and murder of Greg Hawkins . . . in aid of [racketeering]," as to Count 77, and "(2) the conspiracy to murder and murder of Sheila Berry in aid of [racketeering]," as to Count 80. (See id. (emphasis added).)  In exchange for Mr. Jackson's guilty plea, the Government agreed to dismiss "any open Racketeering Acts and Counts" against Mr. Jackson. (See id. at 2.)

At the plea hearing on April 7, 1999, the Government proffered that if Mr. Jackson's case continued to trial the Government would prove the following: (1) Mr. Jackson "agreed with others to kill George Ford," (2) Mr. Jackson "shot Greg Hawkins to death," and (3) Mr. Jackson participated in the murder of Sheila Berry, which was carried out with firearms.

(Dkt. no. 459 at 413:1-414:1.)  During the plea colloquy, Mr. Jackson testified under oath that: (1) he "pointe[d] [sic] out Ford" to "somebody else in the gang" knowing that "they [were] supposed to kill him;" (2) he "went and got the gun," "was present" when Greg Hawkins was killed, and "understood that the gun was going to be used in connection with killing [Mr. Hawkins];" and (3) he "went and got the gun," "want [sic] with others to the apartment" and "knew [Sheila Berry] was going to be killed" with the gun.  (Id. at 415:2-417:13.)  The Government and Mr. Jackson's counsel agreed that Mr. Jackson's colloquy provided a "sufficient factual predicate for the plea." (Id. at 417:17-20.)  The Court accepted Mr. Jackson's plea, satisfied that there was a factual basis for Mr. Jackson's guilt.  (Id. at 400:9-418:1.)

      c. Sentencing

On June 29, 1999, the Court sentenced Mr. Jackson to a total of thirty-five years' imprisonment, followed by three years of supervised release.  (Dkt. no. 683-3 at 7:12-22 (Ex. C).)  The Court delineated the break-down of the aggregate sentence as: 120 months' imprisonment for Count 20 (conspiracy to murder), 60 months' imprisonment for Count 77 (§ 924(c) count), and 240 months' imprisonment for Count 80 (§ 924(c) count).  (Id.)  All time was to be served consecutively.  (Id.) The remaining open counts of the Indictment were dismissed.

(Id. at 8:8-11.)  The Court confirmed that Mr. Jackson waived
the right to appeal his sentence but could appeal if he believed
there were irregularities with his plea.[2]  (Id. at 9:5-18.)

      d. Subsequent Motions to Vacate

After sentencing, Mr. Jackson did not pursue a direct
appeal.  (See Pet. Mem. at 3.)  However, he filed multiple
motions to vacate, set aside, or correct his sentence pursuant
to 28 U.S.C. § 2255.  In his first § 2255 motion, Mr. Jackson
alleged that his counsel was constitutionally ineffective
because he failed to appeal the validity of his plea on the
§ 924(c) counts.  (See dkt. no. 1 in 01-cv-03967.)

The Court rejected his claim of ineffective assistance of
counsel, noting that without the stipulated sentence in the plea
agreement, Mr. Jackson faced up to fifty-four years of
imprisonment for the charges he pled to.  Jackson, 2002 WL
1968328, at *1-2.  The Court further held that Mr. Jackson was
aware that he waived the right to appeal his conviction and that
his counsel could not be faulted "for failure to pursue an
appeal that [was] legally barred."  Id. at *2.  Finally, the

---

[2] An error in the sentencing hearing transcript makes it seem
that the plea agreement included the right to appeal.  However,
when deciding Mr. Jackson's first motion to vacate, Judge
Mukasey found that portion of the transcript to be an error.
See Jackson, 2002 WL 1968328, at *2 (finding that the question
to Government's counsel at the sentencing hearing was, "'did the
[plea] agreement include a waiver of the right to appeal?'" to
which defense counsel responded affirmatively).

Court noted that "Jackson's conduct as he described it [during the plea colloquy] could also have resulted in conviction for either conspiracy to commit murder" or aiding and abetting murder.[3] Id.

Mr. Jackson appealed the denial of his motion to vacate in 2002. (See dkt. no. 559.)  The Court of Appeals dismissed his appeal.  (See dkt. no. 567.)  Thereafter, the Court of Appeals denied Mr. Jackson's requests to file a successive motion to vacate in 2006 and 2009.  (See dkt. nos. 586, 591.)  Mr. Jackson moved to reduce his sentence in 2011,[4] (see dkt. no. 592), but this Court denied that motion.  (See dkt. no. 597.)  The Court of Appeals affirmed this Court's denial.  (See dkt. nos. 598, 603.)

In his prior motions to vacate, Mr. Jackson did not argue that his § 924(c) convictions were based on invalid predicate offenses.  The instant action raises that argument for the first time.

After the Supreme Court's decision in Johnson v. United States, 576 U.S. 591 (2015), Mr. Jackson requested to file a

---

[3] The Court did not specify whether it found that Mr. Jackson could be convicted of both murders or just one of the murders. However, Mr. Jackson's plea colloquy makes clear that there was evidence to support a conviction for both murders because he admitted to an identical course of conduct in both murders.  See infra Part III.b.i.; (dkt no. 459 at 416:4-417:13.).
[4] Mr. Jackson moved to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2).

successive § 2255 motion in 2016, based on <u>Johnson</u>.  (<u>See</u> dkt. no. 617.)  The Court granted a stay of his motion pursuant to the Court's Standing Order, (dkt. no. 624), which was issued in anticipation of many § 2255 petitions that would follow the <u>Johnson</u> decision.  (Dkt. no. 618.)  In 2020, the Court granted Mr. Jackson leave to file a successive § 2255 motion.  (<u>See</u> dkt. no. 674; dkt. no. 675.)  Subsequently, Mr. Jackson filed a memorandum in support of the instant motion on October 13, 2020. (<u>See</u> dkt. no. 683.)

## II.  <u>Legal Standards</u>

### a. <u>Motion to Vacate</u>

Under 28 U.S.C. § 2255, courts may "vacate, set aside, or correct" a sentence on grounds that, <u>inter alia</u>, "the sentence was imposed in violation of the Constitution or laws of the United States, . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  <u>United States v. Bokun</u>, 73 F.3d 8, 12 (2d Cir. 1995) (quoting <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962)).  To prevail on a § 2255 motion, a defendant "must clear a significantly higher hurdle than would exist on direct

appeal." United States v. Frady, 456 U.S. 152, 166 (1982). This is because collateral challenges "are in 'tension with society's strong interest in the finality of criminal convictions.'" See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (quoting Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002)). On a § 2255 motion, a defendant bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000).

    b. Procedural Default

    Under the procedural default doctrine, a guilty plea may not be collaterally attacked unless first challenged on direct review; if a defendant fails to do so, the § 2255 claim is considered procedurally defaulted. See Bousley v. United States, 523 U.S. 614, 621 (1998). The purpose of this doctrine is to promote the "important interest in the finality of judgments." Massaro v. United States, 538 U.S. 500, 504 (2003).

    A defendant may overcome a procedural default by demonstrating either (1) "'cause' and actual 'prejudice,'" or (2) actual innocence. See Bousley, 523 U.S. at 622 (quoting Murray v. Carrier, 477 U.S. 478, 485 (1986)). A court may find "cause" where a claim "is so novel that its legal basis [was] not reasonably available to counsel" at the time of direct review. See id. (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)).

That scenario can occur when the Supreme Court overturns "a longstanding and widespread practice to which th[e] Court ha[d] not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved." See Reed, 468 U.S. at 17 (quoting United States v. Johnson, 457 U.S. 537, 551 (1982)).

Actual prejudice means that the error alleged in the § 2255 motion "worked to [a defendant's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray, 477 U.S. 478, 494 (1986) (quoting Frady, 456 U.S. at 170). A mere "possibility of prejudice" is insufficient. Frady, 456 U.S. at 170. When challenging a guilty plea, a defendant must show that the error was a "fundamental defect which inherently result[ed] in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." See United States v. Timmreck, 441 U.S. 780, 783 (1979). Where a § 924(c) conviction is based upon a guilty plea, prejudice has been defined to require a defendant to "show that there is a reasonable probability that, but for the error, he would not have pleaded guilty." United States v. Dussard, 967 F.3d 149, 156 (2d Cir. 2021) (reviewing the validity of § 924(c) predicate offenses post-United States v. Davis, 139 S. Ct. 2319 (2019), on direct appeal).

Innocence means "factual innocence." Bousley, 523 U.S. at 623. "[M]ere legal insufficiency" is not enough to meet this standard. Id. For a conviction stemming from a plea agreement where the government dismissed more serious charges during plea bargaining, a defendant's "showing of actual innocence must also extend to those charges." Id. at 624. To meet this standard, a defendant "must show that it is more likely than not that no reasonable juror would have found [him] guilty." Schlup v. Delo, 513 U.S. 298, 327-28 (1995).

c. Evolution of the Definition of "Crime of Violence"

A person who "uses or carries a firearm" "during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States" may be convicted under § 924(c). 18 U.S.C. § 924(c)(1)(A). The statute defines a "crime of violence" as an offense that (1) is a felony and (2) satisfies one of two clauses in § 924(c)(3). See id. § 924(c)(3). The first clause is known as the "elements clause" (or the "force clause") and it defines a "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Id. § 924(c)(3)(A). The second clause is known as the "residual clause" (or the "risk of force clause") and it defines a crime of violence as a felony offense that "by its nature, involves a substantial risk that physical force

11

against the person or property of another may be used in the course of committing the offense." Id. § 924(c)(3)(B).

Two other statutes also impose criminal penalties for certain conduct qualifying as a "crime of violence" or a "violent felony." See Armed Career Criminal Act (the "ACCA"), Id. § 924(e) ("a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . shall be . . . imprisoned not less than fifteen years"); Immigrant and Nationality Act (the "INA"), 8 U.S.C. § 1101(a)(43)(F) ("[t]he term 'aggravated felony' means . . . a crime of violence (as defined in section 16 of title 18 . . . ) for which the term of imprisonment [is] at least one year"). Like § 924(c), those statutes define "violent felony" and "crime of violence" with an elements clause and a residual clause. See 18 U.S.C. § 924(e)(2)(B) ("violent felony"); 18 U.S.C. § 16 ("crime of violence"). Despite slight wording differences, the definitions of those terms mirror that of "crime of violence" in 18 U.S.C. § 924(c). Compare id. § 924(e)(2)(B) ("violent felony") and id. § 16 ("crime of violence") with id. § 924(c)(3) ("crime of violence").

The "residual clauses" in those three statutes have been invalidated as unconstitutionally vague. First, in Johnson v. United States, the Court invalidated the residual clause of the ACCA. 576 U.S. 591 (2015). Next, in Sessions v. Dimaya, the

Court invalidated the residual clause of the INA as defined in 18 U.S.C. § 16.  138 S. Ct. 1204 (2018).  Finally, in United States v. Davis, the Court invalidated the residual clause of 18 U.S.C. § 924(c).  139 S. Ct. 2319 (2019).  By invalidating these "residual clauses," the Supreme Court cast doubt on the integrity of many convictions under those statutes.  Since the Supreme Court held that Johnson applies retroactively in cases on collateral review, see Welch v. United States, 578 U.S. 120, 130 (2016), many defendants convicted under one of those statutes have moved to vacate their convictions.

To decide a motion to vacate a § 924(c) conviction, courts must determine whether the conviction is predicated on a valid offense—a felony offense that meets the definition of the "elements clause."  See Boykin v. United States, 10-cr-391-61 (CM), 2020 WL 774293, at *5 (S.D.N.Y. Feb. 18, 2020).  In Davis, the Supreme Court adopted the traditional "categorical" approach to determine if a felony offense meets the "elements clause." 139 S. Ct. at 2325-28; see also United States v. Hendricks, 921 F.3d 320, 327 (2d Cir. 2019) ("To determine whether a crime is a 'crime of violence' under § 924(c)(3)(A), we apply the so-called 'categorical approach.'" (quoting Taylor v. United States, 495 U.S. 575, 600 (1990))).  Under this approach, courts do not look at the particular underlying facts or conduct of a defendant's offense.  See Descamps v. United States, 570 U.S. 254, 261

(2013).  Rather, courts must "consider the minimum conduct necessary for a conviction of [a] predicate offense" and then they must determine "whether such conduct amounts to a crime of violence" under § 924(c)'s elements clause.  See United States v. Hill, 890 F.3d 51, 56 (2d Cir. 2018).

Although § 924(c) is part of a federal statute, a predicate "crime of violence" can be a state law offense.  Cf. Boykin, 2020 WL 774293, at *6 ("While murder is defined by federal law, see 18 U.S.C. § 1959(a)(1), what the federal statute criminalizes is behavior that qualifies as 'murder' under state law.").

## III. **Discussion**

Mr. Jackson challenges his § 924(c) convictions on the grounds that the predicate offenses—conspiracy to murder and murder in aid of racketeering—are not crimes of violence because Davis invalidated § 924(c)'s residual clause and the predicate offenses do not meet the definition of the elements clause.

The parties correctly agree that conspiracy to murder is not a "crime of violence."  See United States v. Martinez, 991 F.3d 347, 354 (2d Cir. 2021) (finding that conspiracy offenses categorically are not crimes of violence under § 924(c)).  However, they disagree over (1) which offense(s) formed the basis of the § 924(c) conviction in Count 77, and (2) whether murder in aid of racketeering is a "crime of violence."

Additionally, the Government argues that Mr. Jackson's motion must fail because he procedurally defaulted his challenge by failing to raise it on direct appeal.

The Court finds that Mr. Jackson's motion fails because he procedurally defaulted his current challenge to the § 924(c) convictions and, alternatively, his arguments fail on the merits.

      a. <u>Procedural Default</u>

          i. **Mr. Jackson establishes cause.**

Although he never pursued a direct appeal, Mr. Jackson argues that he has established cause because the challenge to his convictions in the instant action lacked a legal basis at the time of his conviction in 1999. (<u>See</u> Pet. Mem. at 13-15.) He contends there was no legal basis for his current challenge—that murder is not a crime of violence under the elements clause—because murder was a crime of violence under the then-valid residual clause and there was no legal basis to attack the constitutionality of that clause in 1999. (<u>See</u> <u>id.</u> at 14.) The Government argues that Mr. Jackson cannot show cause because litigants had raised vagueness challenges to § 924(c) before he was convicted. (<u>See</u> Opp. at 14-15.)

The Court finds that Mr. Jackson has established cause because his § 924(c) challenge was not "reasonably available" at the time of his conviction. Beginning with <u>Johnson</u> in 2015, the

Supreme Court invalidated three similarly worded residual clauses in criminal statutes as unconstitutionally vague, including the "residual clause" of § 924(c).  See Johnson, 576 U.S. at 597; Dimaya, 138 S. Ct. at 1215-16; Davis, 139 S. Ct. at 2336.  In 2016, the Supreme Court held that Johnson applies retroactively to cases on collateral review.  Welch, 578 U.S. at 130.

Here, Mr. Jackson's failure to appeal his § 924(c) conviction occurred nearly two decades before Johnson and Welch. Thus, the arguments challenging "residual clauses" in Johnson, Dimaya, and Davis, were unheard of at the time of Mr. Jackson's conviction.  See Vilar v. United States, No. 16-cv-5283, 2020 WL 85505, at *2 (S.D.N.Y. Jan. 3, 2020) ("In the absence of any indication that Davis (or its predecessors Sessions v. Dimaya or Johnson v. United States) was even close to anybody's radar screen in 1997 or 1998, I will assume that the claim here is so novel that it was not reasonably available to counsel at the time." (citations omitted)).  Accordingly, when he was convicted, Mr. Jackson did not have a reasonably available legal basis to challenge the unconstitutional nature of § 924(c)'s residual clause.  See Aquino v. United States, No. 16-cv-5229 (PKC), 2020 WL 1847783, at *2 (S.D.N.Y. Apr. 13, 2020) (finding that petitioner showed cause where his direct appeal occurred in 2015, prior to Johnson, at a time when "Second Circuit

caselaw . . . foreclosed his § 924(c) argument" (quoting Camacho v. United States, No. 17-cv-05199, 2019 WL 3838395, at *2 (S.D.N.Y. Aug. 15, 2019))); Camacho, 2019 WL 3838395, at *2 (finding that petitioner had cause where he was sentenced in 2014 before the Supreme Court had granted certiorari in Johnson); Clayton v. United States, 456 F. Supp. 3d 575, 578 (S.D.N.Y. 2020) (finding that petitioner showed cause because he was sentenced in 2011, before Johnson, when Second Circuit case law foreclosed his challenge to the validity of the predicate crime of violence under § 924(c)).

To support its arguments that Mr. Jackson cannot show cause, the Government cites to two pre-1999 cases that raised vagueness challenges to § 924(c): United States v. Santos, No. S 91-cr-00724 (CSH), 1992 WL 232057 (S.D.N.Y. Sept. 2, 1992), and United States v. Magee, 21 F.3d 1108, 1994 WL 171513 (5th Cir. Apr. 22, 1994) (unpublished decision).  (See Opp. at 15.) Santos and Magee are distinguishable because they challenged the use of the terms "firearm silencer" and "firearm muffler" and "drug trafficking," respectively.  See Santos, 1992 WL 232057, at *8; Magee, 1994 WL 171513, at *4-5.  Unlike the Johnson line of cases, Santos and Magee did not involve a constitutional vagueness challenge to the entire residual clause of a criminal statute.

The Government also cites to <u>United States v. Bennett</u>, 165 F.3d 36, 1998 WL 781231 (9th Cir. Nov. 9, 1998) (unpublished decision), for the proposition that other litigants had brought vagueness challenges to the "crime of violence" definition of § 924(c) by 1999.  (<u>See</u> Opp. at 15.)  <u>Bennett</u>, however, was a Ninth Circuit decision where the predicate crime of violence at issue was possession of a firearm silencer.  <u>See</u> <u>Bennett</u>, 1998 WL 781231, at *1.  In Mr. Jackson's case, the predicate crime at issue is murder.  (<u>See</u> Pet. Mem. at 1.)  Thus, the Court finds that the argument in <u>Bennett</u> was not a reasonably available legal basis for Mr. Jackson to raise the challenge to his § 924(c) convictions in the instant motion.

### ii. Mr. Jackson fails to establish actual prejudice

Mr. Jackson asserts that he would not have pled guilty to the § 924(c) counts had he known that the Supreme Court would invalidate § 924(c)'s residual clause.  (<u>See</u> Pet. Mem. at 15-18; Reply at 8-9.)  As a threshold matter, § 924(c) "<u>does not require the defendant to be convicted of (or even charged with) the predicate crime</u>, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." <u>Dussard</u>, 967 F.3d at 157 (quoting <u>Johnson v. United States</u>, 779 F.3d 125, 129-30 (2d Cir. 2015)).

<u>Dussard</u> is instructive because it contains analogous facts: it involved a defendant who pled guilty to a § 924(c) count

predicated on two offenses, one of which became an invalid crime of violence post-Davis. See id. at 156-58. Nevertheless, the Dussard court denied the defendant's challenge to his § 924(c) conviction finding that the "description of the evidence . . . provided an ample predicate for a [§ 924(c)] conviction." See id. at 157. Based on the record, the Dussard court found that the defendant could have been convicted of the still-valid predicate offense and that he "demonstrated [a] willingness to plead guilty to [the § 924(c) charge] in order to gain dismissal of [the charged predicate offense] and avoid its mandatory minimum 10-year term of imprisonment." See id. at 157-59. Thus, the Dussard court held that the defendant failed to "show[] any reasonable probability that he would not have pleaded guilty" to the § 924(c) count. Id. at 159.

The Court considers the entire record to determine if Mr. Jackson can establish actual prejudice. See id. at 156-58. Like in Dussard, the record indicates that there was evidence to convict Mr. Jackson of the predicate offenses referenced in the § 924(c) counts. Mr. Jackson's plea colloquy provides evidence regarding those offenses—the substantive murders referenced in Counts 77 and 80. See Jackson, 2002 WL 1968328, at *2 (noting that Mr. Jackson's conduct as described in the plea colloquy could have resulted in a murder conviction); (dkt. no. 683-1 at 416-17 (Ex. A) (noting that with respect to the murders of Greg

19

Hawkins and Sheila Berry, Mr. Jackson stated that he went and got the guns, understood the guns were going to be used to kill the victims, and was present when the victims were killed).) The Indictment charged Mr. Jackson with those murders, (dkt. no. 193 ¶¶ 96-97, 112-13), and like in Dussard, the Government dismissed those charges in exchange for Mr. Jackson's guilty plea. (See dkt. no. 683-2 at 2 (Ex. B).) Because the record provides evidence to support a substantive murder conviction, the Court finds that there is no reasonable probability that Mr. Jackson would not have pled guilty to the § 924(c) counts. In any event, Mr. Jackson fails to establish actual prejudice. See Dussard, 967 F.3d at 156.

### iii. Mr. Jackson does not argue actual innocence

Because Mr. Jackson fails to establish "actual prejudice," Mr. Jackson can only overcome procedural default by establishing "actual innocence." See Bousley, 523 U.S. at 622. However, Mr. Jackson fails to do so by failing to allege actual innocence in his § 2255 motion. Even if Mr. Jackson had alleged actual innocence, the conduct described in his plea colloquy would preclude him from establishing it. (See dkt. no. 459 at 416:4-417:13 (Mr. Jackson stated that he got the guns used for both murders knowing that they would be used to murder the victims).)

b. Merits

Assuming arguendo that Mr. Jackson overcame a procedural default, the Court finds that Mr. Jackson's motion fails on the merits.

### i. The predicate offense(s) underlying Count 77

Mr. Jackson claims that Count 77 is based only on a conspiracy to murder offense, which is not a crime of violence post-Davis. (See Pet. Mem. at 2, 7-8; Reply at 1-4.)  With respect to Count 77, Mr. Jackson argues that he pled guilty to using a firearm only "in connection with . . . conspiracy to murder" because that is how the Court described Count 77 during the plea colloquy. (See Pet. Mem. at 2; Reply at 1-4.)  The Government argues that Counts 77 and 80 both rest on substantive murder as a predicate offense. (See Opp. at 7-9.)  The Indictment, plea colloquy, and plea agreement resolve this dispute.

Counts 77 and 80 of the Indictment charged Mr. Jackson with using and carrying a firearm in connection with both murder and conspiracy to murder. (See dkt. no. 193 ¶¶ 144, 147.)  Count 77 refers to Racketeering Act Fourteen of Counts 1 and 2 and Counts 26 and 27 of the Indictment. (Id. ¶ 144.)  Racketeering Act Fourteen charged that Mr. Jackson and others "unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Greg Hawkins . . . in violation of New York State

Penal Law." (Id. ¶ 25.)  Whereas Count 26 charged Mr. Jackson
with conspiracy to murder Greg Hawkins, Count 27 charged him
with the murder and aiding and abetting the murder of Hawkins,
in violation of New York State Penal Law and 18 U.S.C.
§§ 2, 1959(a)(1).  (Id. ¶¶ 94-97.)  The plea agreement also
states that Count 77 charged Mr. Jackson with "the conspiracy to
murder and murder of Greg Hawkins."  (Dkt. no. 683-2 at 1-2 (Ex.
B) (emphasis added).)  During the plea colloquy, Mr. Jackson
acknowledged that he received a copy of the Indictment
containing the charges he was pleading guilty to, that he
reviewed those charges, (dkt. no. 459 at 405:4-11), and that he
understood them, including those in Count 77.  (Id. at 405:4-
406:21.)  Additionally, the counts he pled guilty to were read
out at the sentencing.  (Dkt. no. 683-3 at 7:12-20 (Ex. C).)
Based on the Indictment, plea colloquy, plea agreement, and
sentencing, Count 77 clearly is based on a conspiracy to murder
offense and a substantive murder offense.

The Court is unconvinced by Mr. Jackson's argument for an
additional reason.  Mr. Jackson's level of involvement in the
Count 77 and Count 80 murders was the same.  For both counts,
Mr. Jackson admitted that he went and got a gun, knew the
purpose for which the gun would be used, and was present when
the gun was used to kill each victim.  (See dkt. no. 459 at
416:4-417:13.)  As to Count 80, Mr. Jackson concedes that he

pled guilty to using a firearm in connection with a substantive murder offense.  (See Pet. Mem. at 9.)   Thus, Mr. Jackson argues that the basis for his guilt as to Count 77 is different from the basis for his guilt as to Count 80, despite admitting to an equal level of involvement in the Count 77 and Count 80 murders. That argument contravenes logic.  Accordingly, like the Count 80 guilty plea, the Count 77 guilty plea is based on a substantive murder offense.

### ii. Murder as a "crime of violence"

As noted, each § 924(c) count was predicated on two offenses: (1) conspiracy to murder, and (2) murder in aid of racketeering.  If one of those offenses is a "crime of violence" under § 924(c)'s "elements clause," Mr. Jackson's motion fails. See United States v. Eldridge, 2 F.4th 27, 35-40 (2d Cir. 2021) (upholding a § 924(c) conviction that was based on at least one valid predicate offense), petition for cert. filed, (US Nov. 23, 2021) (No. 18-3294).  Because conspiracy to murder is not a "crime of violence," the question on the merits of this motion is whether murder in aid of racketeering is a "crime of violence."  To answer this question, the Court applies the categorical approach and asks whether the minimum conduct necessary to commit murder "necessarily involves violence."  See Hendricks, 921 F.3d at 327.

23

Mr. Jackson pled guilty to using a gun in connection with an offense that constitutes a "crime of violence."  (See dkt. no. 683-2 at 1-2 (Ex. B).)  In Mr. Jackson's case, the underlying offense—murder—is an offense under New York law. (See dkt. no. 193 ¶¶ 97, 113) ("Raymond Jackson . . . murdered and aided and abetted the murder of Greg Hawkins . . . in violation of New York State Penal Law" and "Raymond Jackson . . . murdered and aided and abetted the murder of Sheila Berry . . . in violation of New York State Penal Law.") Thus, this Court asks whether murder—as defined by New York State Penal Law—categorically constitutes a "crime of violence" under § 924(c)'s "elements clause."

New York's murder statute has distinct subsections with different elements.  See N.Y. Penal Law § 125.25.  Thus, the Court must look at the Indictment to determine "what crime, with what elements," the Government charged Mr. Jackson with.  See Gray v. United States, 980 F.3d 264, 266 (2d. Cir. 2020) (quoting Mathis v. United States, 136 S. Ct. 2243, 2248 (2016)) (noting that if the statute of an offense is divisible, courts may look at documents from the record to determine the specific crime and elements charged); see also Martinez, 991 F.3d at 354 (citing Descamps, 570 U.S. at 254) (noting that a statute is divisible when one or more of its elements are set out in the alternative).

Counts 77 and 80 reference underlying charges alleging that Mr. Jackson "intentionally[] and knowingly" murdered and aided and abetted the murder of another person.  (See dkt. no. 193 ¶¶ 97, 113.)  Accordingly, the underlying offense for both counts is intentional murder in the second degree, which is governed by N.Y. Penal Law § 125.25(1).

Mr. Jackson argues that intentional murder is not a categorical "crime of violence" because under New York's statute it can be committed through omission or inaction and without the use of force.  (Pet. Mem. at 11-13.)  The Government argues that under Second Circuit caselaw, attempted murder, and thus murder, is a "crime of violence" under § 924(c)'s "elements clause." (Opp. at 10-12.)

The Court is not persuaded by Mr. Jackson's argument as it relies on a case, United States v. Scott, 954 F.3d 74 (2d Cir. 2020), that the Second Circuit overturned after the instant motion was filed.  See United States v. Scott, 990 F.3d 94 (2d Cir. 2021) ("Scott II") (en banc).  In Scott II, the Court of Appeals held that first-degree manslaughter under New York law is categorically a violent felony even if it can be committed by

omission.[5]  See id. at 125.  The manslaughter offense at issue in Scott II and the intentional murder offense at issue here have identical actus reus and causation elements.  Compare N.Y. Penal Law § 125.20(1) ("with intent to cause serious physical injury[,] . . . causes . . . death") with id. § 125.25(1) ("with intent to cause . . . death[,] . . . causes . . . death"). Thus, it follows that intentional murder under New York law categorically is a "crime of violence" under § 924(c)'s elements clause.

Moreover, the Second Circuit has explicitly said that it "does not question whether intentional murder under New York law is a violent crime."  See Martinez, 991 F.3d at 355 n.4 (citing Scott, 990 F.3d at 99-101).  Accordingly, Mr. Jackson's § 924(c) convictions are both predicated on an offense that is a "crime of violence" under the "elements clause," and his § 2255 motion fails on the merits.

---

[5] In Scott II, the defendant argued that intentional manslaughter was not a violent felony under the ACCA—18 U.S.C. § 924(e)(2)(B).  As noted, the definition of "violent felony" in the ACCA mirrors the definition of "crime of violence" in 18 U.S.C. § 924(c).  See supra Part II.c.

IV.   **Conclusion**

For the reasons set out above, Petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (dkt. no. 617) is denied.

The Clerk of the Court is directed to close the open motions (dkt. no. 617 in 96-cr-515; dkt. no. 1 in 16-cv-4792) and close case number 16-cv-4792.  The Clerk of the Court is further directed to mail a copy of this order to Mr. Jackson.

**SO ORDERED.**

Dated:     New York, New York
           March 31, 2022

_____
LORETTA A. PRESKA
Senior United States District Judge